**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SHELLY D. SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 4:12-CV-724 |
| | § | |
| BANK OF AMERICA, NA, et al., | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
**AND ORDER ABATING PRETRIAL DEADLINES**

Now before the Court are Defendant Bank of America, N.A., ("Bank of America") and

Defendant Deutsche Bank National Trust Company, As Trustee for the Holders of the First Franklin

Mortgage Loan Trust 2006-FF7, Mortgage Pass through Certificates, Series 2006-FF7

("Deutsche")'s Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 14) and Defendants'

Motion for Summary Judgment on Plaintiff's First Amended Complaint (Dkt. 25). As set forth

below, the Court finds that the motion to dismiss should be GRANTED in part and DENIED in part,

that Defendants' motion for summary judgment should be GRANTED as to all remaining claims,

and that Plaintiff shall take nothing by any of her claims here.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On or about January 31, 2006 Plaintiff Shelly D. Smith signed a Promissory Note and Deed

of Trust in conjunction with her purchase of the property located at 1888 Sandstone Drive, Frisco,

Texas ("the Property"). *See* Dkt. 11. The original lender listed in the documents was NationPoint,

a division of National City Bank of Indiana. The Deed of trust named MERS "solely as nominee"

for NationPoint, and the mortgage was subsequently transferred to HSBC Bank, NA. Then,

according to Plaintiff, on May 1, 2006, HSBC transferred the mortgage to "First Franklin Mortgage Loan Trust 2006-FF7," "a mortgage-backed securities trust settled under the law of the State of New York and registered with the Securities and Exchange Commission." Dkt. 11. at ¶9. Plaintiff alleges that the Trust's founding agreement identifies National City Home Loan Services, Inc. as the servicer and Deutsche Bank National Trust Company as the trustee for the Trust. Dkt. 11. at ¶¶ 9-10. Plaintiff further alleges that National City Home Loan and NationPoint became wholly owned subsidiaries of Bank of America in late 2006. Dkt. 11. at ¶11. Plaintiff further contends that, as of June 2008, the Trust was dissolved and had no property and that all of its assets were distributed to the certificate-holders of the Trust. Dkt. 11. at ¶13.

Apparently, Plaintiff fell behind in her mortgage payments in 2008 and she claims that she "began receiving documentation with conflicting information about who the mortgage company was." Dkt 11 at ¶14.

Plaintiff originally filed suit in Denton County on November 5, 2012. Defendants removed the case to this Court on November 16, 2012. *See* Dkt. 1.

Plaintiff's First Amended Complaint – the live pleading here – asserts to following claims against Defendants: (1) challenge of enforceability of the negotiable instrument; (2) common law fraud; (3) negligent misrepresentation; (4) violations of the Texas Debt Collection Practices Act; (5) violations of the Texas Deceptive Trade Practices Act (unconscionable acts); and (6) violations of the Texas Deceptive Trade Practices Act (misrepresentation of services). *See* Dkt. 11. Plaintiff also seeks attorney's fees, punitive damages and equitable relief.

Defendants have filed a motion seeking to dismiss all of Plaintiff's claims. Defendants make the following arguments: (1) Defendants have full capacity to enforce Plaintiff's indebtedness; (2) Plaintiff fails to state a claim for common law fraud, negligent misrepresentation, and wrongful debt collection practices under the Texas Debt Collections Practices Act; and (3) Plaintiff is not a consumer under the DTPA.

Plaintiff has filed a response, arguing that her case is distinguishable from other "holder of the note" challenges raised in this Court because here: (1) the Trust who purportedly owns the Note does not exist, and (2) the notice of foreclosure was not sent in accordance with the Texas Property Code because Defendant was accepting partial payments and Plaintiff was entitled to clear notice that Defendant would no longer accept partial payments prior to her home being posted for sale. *See* Dkt. 21.

### STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed.2d 929 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at 563 n.8.

Although detailed factual allegations are not required, a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level" and into the "realm of plausible liability." *Id*. at 555, 557 n.5. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955)). For a claim to have facial plausibility, a plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted).

## MOTION TO DISMISS ANALYSIS

### Challenge of Enforceability of the Negotiable Instrument

Although no specific cause of action is identified, the Court first addresses Plaintiff's challenge of the enforceability of the Note here. In her complaint, Plaintiff argues that there are three main problems with the enforceability of this particular promissory Note: (A) the party purporting to enforce the Note is not the holder of the mortgage; (B) the Note was not properly accelerated; and (C) proper notice was not given of the Substitute Trustee's Sale. Dkt. 11 at ¶18.

Plaintiff claims that neither BOA, nor Deutsche, nor MERS has the authority to foreclose on the Property. Dkt. 11 at ¶19. The Court finds that no claim has been stated sufficient to challenge Defendants' foreclosure efforts based on Plaintiff's attack on the Note.

The Deed of Trust signed by Plaintiff and attached to Defendants' motion:[1]

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property...

Dkt. 14-2 at 4. Defendants also attach to their motion to dismiss a June 11, 2009 Transfer and Assignment assigning MERS's interests in the Deed of Trust to Deutsche Bank National Trust Company, as trustee for First Franklin Mortgage Loan Trust 2006-FF7, Mortgage Pass-Through Certificates, Series 2006-FF7. Dkt. 14-3 at 3. Plaintiff's claims as to who held the Note lack merit, as "the mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure." *Martins v. BAC Home Loans Servicing, L.P.*, 2013 WL 3213633, 3 (5th Cir. 2013). *See also Casterline v. OneWest Bank, F.S.B.*, 2013 WL 3868011, 3 (5th Cir. 2013) ("Texas law did not require OneWest to present the original Note to foreclose on Casterline's property."). As a sister district court has recently explained:

---

[1]Although a district court may generally not go outside the complaint when considering a motion to dismiss, a district court may consider documents attached to a motion to dismiss if the documents are referenced by the plaintiff's complaint and are central to the plaintiff's claims. *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004). All documents attached to Defendants' motion are referenced in the complaint and are central to Plaintiffs' claims. The Court thus considers them.

> Texas law differentiates between enforcement of a promissory note and foreclosure. Foreclosure enforces the deed of trust, not the underlying note. It is an independent action against the collateral and may be conducted without judicial supervision. Enforcement of the promissory note, on the other hand, is a personal action against the signatory and requires a judicial proceeding.

*Wells v. BAC Home Loans Servicing, L.P.*, 2011 WL 2163987, 2 (W.D. Tex. 2011) (citing *Slaughter v. Qualls,* 139 Tex. 340, 346, 162 S.W.2d 671, 675 (1942); *Aguero v. Ramirez,* 70 S.W.3d 372, 375 (Tex. App. – Corpus Christi 2002, pet. denied). TEX. PROP. CODE ANN. § 51.002 (West Supp.2007); *Tierra Sol Joint Venture v. City of El Paso,* 311 S.W.3d 492, 499 (Tex. App. – El Paso 2009, pet. denied); Tex. Bus. & Com. Code § 3.401(a); *TrueStar Petroleum Corp. v. Eagle Oil & Gas Corp.,* 323 S.W.3d 316, 319 (Tex. App. – Dallas 2010, no pet.)). In Texas, "[a] trustee has no power to sell the debtor's property, except such as may be found in the deed of trust." *University Sav. Ass'n v. Springwoods Shopping Center,* 644 S.W.2d 705, 706 (Tex. 1982).

Indeed, challenges like Plaintiff's to parties' rights to foreclose have been consistently rejected in this Circuit.[2] *Martins v. BAC Home Loans Servicing, L.P.*, 2013 WL 3213633, 4 (5th Cir. 2013) (The "split-the-note" theory is therefore inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned."); *Wigginton v. Bank of New York Mellon*, 488 Fed. Appx. 868, 870 (5th Cir. 2012) (affirming dismissal of breach of contract and other claims that Texas law rejects split the note theory); *Richardson v. CitiMortgage, Inc.*, 2010 WL 4818556, at *5 (E.D. Tex. 2010) (rejecting the plaintiffs' attack on MERS, and noting that "[u]nder Texas law, where a deed of trust, as here, expressly provides for MERS to have the

---

[2]Regardless of how Plaintiff's later briefing characterizes her challenge of the mortgage documents, the language of her complaint clearly challenges who holds the Note. Therefore, the Court's analysis on 12(b)(6) is limited to the allegations stated in the complaint.

power of sale, then MERS has the power of sale") (citing *Athey v. MERS,* 314 S.W.3d 161, 166 (Tex. App. — Eastland 2010)); *Allen v. Chase Home Finance, LLC*, 2011 WL 2683192, at *3-4 (E.D. Tex. 2011); *Anderson v. CitiMortgage, Inc.*, 2011 WL 1113494, at *1-2 (E.D. Tex. Mar. 24, 2011); *see also Santarose v. Aurora Bank FSB,* 2010 WL 2232819, at *5 (S.D. Tex. Jun. 2, 2010) (rejecting the argument that MERS lacked standing to foreclose and was not a real party in interest); *Wiggington v. Bank of New York Mellon*, 2011 WL 2669071, at *3 (N.D. Tex. Jul. 7, 2011). "Because the deed of trust specifically provided that MERS would have the power of sale, MERS had the power of sale that was passed to U.S. Bank upon MERS's assignment." *DeFranchesci v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, at *4 (N.D. Tex. Aug. 31, 2011) (quoting *Richardson*, 2010 WL 4818556, at *5); *see also Casterline v. OneWest Bank, F.S.B.*, 2013 WL 3868011, 3 (5th Cir. 2013) ("MERS had the authority to transfer the Security Instrument together with the power to foreclose to another party, including OneWest.").

The plain language of the Deed of Trust grants MERS and its assigns the power of sale, and Plaintiff has not challenged the validity of the Deed of Trust. Plaintiff's challenges of the assignment of the Deed of Trust are not enough to state a claim. *See Morlock, L.L.C. v. JP Morgan Chase Bank, N.A.*, 2013 WL 2422778, 2 (5th Cir. 2013) (finding that no quiet title claim had been stated where the plaintiff did not challenge the validity of the Deed of Trust or suggest its interest was superior to the Deed of Trust but merely questioned the validity of the assignment of the Deed of Trust by MERS); *Turner v. AmericaHomeKey Inc.*, 514 Fed. Appx. 513, 516-517 (5th Cir. 2013) (affirming dismissal of quiet title action where record contained documentation of transfer of deed of trust to MERS and plaintiff failed to state any facts regarding strength of his title to the property).

Plaintiff also challenges Defendants' attempted foreclosure by arguing that the Note was not properly accelerated. Dkt. 11 at ¶20. In support of this theory, Plaintiff argues that the individual who executed the Assignment of the Deed of Trust as the "Assistant Secretary for Assignments" for MERS was not an actual officer of MERS and therefore had no authority to execute the assignment on its behalf. Such a challenge to the assignment does not state a claim under which Plaintiff can recover. *Reinagel v. Deutsche Bank Nat. Trust Co.*, __F.3d __, 2013 WL 3480207 (5th Cir. 2013) (under Texas law, alleged lack of authority of individual who executed assignment of mortgagors' note and deed of trust, who signed as vice president of financial institution serving as loan originator's authorized agent even though he purportedly was employee of third-party contractor, merely rendered assignment voidable at the election of institution, or originator through institution, and not void, and thus did not provide basis for mortgagors to challenge validity of assignment).

Plaintiff's complaint also challenges the June 12, 2009 Notice of Acceleration, arguing that it did not contain proper language for acceleration and failed to provide her with clear notice that the lender would no longer accept late payments. The Notice states that "[n]otification was sent that default had occurred in the payment of the Note and that HOME LOAN SERVICES, INC. would accelerate the maturity of the Note if you did not cure the default." Dkt. 14-4. The Notice also states that all unpaid principal and interest are due and payable. The Court agrees with Defendant that, given this clear language, Plaintiff can in no way support a claim that Defendants' Notice of Acceleration was insufficient to put her on notice that failure to make full payment of the loan would result in a foreclosure.

Although Plaintiff alleges that she "made partial payments after the acceleration notice was mailed," *see* Dkt. 11 at ¶21, she does not allege acceptance of any prior late payments by Defendants such that they would be required to notify her that such late payments would no longer be accepted. *Cf., McGowan v. Pasol*, 605 S.W.2d 728, 732 (Tex. App. – Corpus Christi 1980) (if the holder of the note has accepted late payments on numerous occasions in the past, he is precluded from accelerating the maturity of an installment note because of a single late payment unless if notifies borrower, prior to the late payment for which default is claimed, that in the future he will not accept late payments).

More importantly, Plaintiff has not alleged how she was harmed in any way by this notice, as no foreclosure sale occurred as a result. Indeed, the facts alleged by Plaintiff in her complaint state that this was the first of numerous letters regarding foreclosure she received over an almost three year period from June 2009 until March 2012.[3]

At best, it seems to the Court that any irregularities in the Notice of Acceleration would go to a claim of wrongful foreclosure, which requires a foreclosure sale. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. – Corpus Christi 2008, no pet.) (to make a claim for wrongful foreclosure under Texas law, a plaintiff must show (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price). Since no facts have been alleged to date that any

---

[3]The Court notes that Plaintiff's summary judgment evidence includes a later notice, issued on November 8, 2010 giving her the right to cure and notifying her that failure to pay the full amount due would result in acceleration. *See* Dkt. 38-1 at 66-67. Thus, even if Plaintiff could be said to have stated a claim as to the November 2009 notice, she has failed to create a fact issue on her claims given the subsequent notice which explicitly gave her the opportunity to cure.

foreclosure sale has occurred, no claim has been stated based on the language of the June 12, 2009

Notice of Acceleration. *See, e.g., Marsh v. Wells Fargo Bank, N.A.*, 2011 WL 180031, 5 (N.D. Tex.

2011) ("Plaintiffs cannot state a claim for wrongful foreclosure because no foreclosure sale has

occurred.").

      Simply stated, even assuming she had identified a specific cause of action in her challenge

to the foreclosure under which she could recover (whether it be a quiet title action or the like) –

which she has not – Plaintiff has not stated any facts in this case that would show that she is current

on her loan payments, that the Deed of Trust she executed is invalid, or that she has standing to

challenge the foreclosure on the Property based on who holds the Note. Plaintiff's complaint

concedes that she fell behind in her payments and Plaintiff's complaint does not state facts to

challenge the Deed of Trust which explicitly gives MERS and its assigns the power of sale. No

viable cause of action regarding the foreclosure has been stated based on the facts alleged.

### *Fraud Claims*

      Next, the Court turns to Plaintiff's fraud claims. To assert a claim of fraud under Texas law,

a plaintiff must allege (1) a material representation was made; (2) the representation was false; (3)

when the representation was made, the speaker knew it was false or made it recklessly without any

knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the

intent that the other party should act upon it; (5) the party acted in reliance on the representation; and

(6) the party thereby suffered injury. *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d

200, 212 (5th Cir. 2009) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573,

577 (Tex. 2001)). Morever, Federal Rule of Civil Procedure 9 requires that a party state with

particularity the circumstances constituting fraud or mistake.  FED. R. CIV. P. 9(b).

Here, Plaintiff has alleged that she was told that her mortgage was owned by a Trust which she claims did not exist.  Plaintiff claims that she relied on this statement to her detriment by making payments on the loan when the Trust did not exist.  If the Trust did not exist, then a cause of action arguably has been stated for the time period Plaintiff was making payments on her loan.  If the Trust existed – as Defendants claim – Plaintiff cannot take anything by this claim.  The claim should not be dismissed, however, based on a failure to state a claim.

**Economic Loss Doctrine and Neligent Misrepresentation**

Plaintiff also claims that Defendants' representations regarding who owned her loan constituted negligent misrepresentations.  Defendants argue that Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine.  The economic loss doctrine has been applied consistently to bar claims for negligence and other tort claims when the parties' relationship and its attendant duties arise from a contract.  *See Southwestern Bell Tel. Co. v. Delanney* 809 S.W.2d 493, 494-95 (Tex. 1991) ("if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract," and affirming dismissal of negligence claims based on breach of contractual duty); *see also Hugh Symons Group v. Motorola, Inc.,* 292 F.3d 466, 470 (5th Cir. 2002) (citing *Haase v. Glazner,* 62 S.W.3d 795, 799 (Tex. 2002)) (a plaintiff generally "may not recover in tort for claims arising out of an unenforceable contract under the statute of frauds.").  Thus, "if the defendant's conduct ... would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claims may also sound in tort." *Southwestern Bell Tel. Co.,* 809 S.W.2d at

494. If, however, "the defendant's conduct ... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim sounds only in contract." *Id.* In order to recover for a claim of negligent misrepresentation, a plaintiff must show an injury independent from the subject matter of the contract. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663–64 (Tex. 1998) (per curiam); *see also Narvaez v. Wilshire Credit Corp.*, 757 F. Supp.2d 621, 634 (N.D. Tex. 2010).

Here, Plaintiff argues that she has suffered pecuniary and non-pecuniary damages and, although not in the negligent misrepresentation portion of her complaint, that her reputation and credit score were damaged. Dkt. 11 at ¶28. Viewing the pleadings in a light most favorable to Plaintiff, the Court finds that she has pleaded sufficient damages in excess of the value of the contract. The economic loss rule should not bar her negligent misrepresentation claims under Rule 12(b)(6). *See, e.g., Deuley v. Chase Home Finance LLC,* 2006 WL 1155230, 3 (S.D. Tex. 2006) ("Therefore, because the Deuleys allege they suffered some type of damages, the Court denies Chase's motion to dismiss at this stage of the proceedings and instead grants its motion for a more definite statement so that the type of damages the Deuleys seek may be determined.").

Further, because Plaintiff has stated that she was told that her loan was owned by a Trust and that the Trust did not exist, the Court also finds that Plaintiff has stated facts sufficient to support her negligent misrepresentation claim. Under Texas law, a claimant alleging negligent misrepresentation must show the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant

did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation. *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 734 (N.D. Tex. 2011) (quoting *Sloane*, 825 S.W.2d at 442) (internal quotations omitted). Plaintiff has alleged enough representations of existing fact (including who owned her loan or was servicing her loan at any given time received) – which if such facts are true – could support a claim of negligent misrepresentation. *See, e.g., Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

The Court thus finds that the facts stated in Plaintiff's complaint are sufficient to state a claim for negligent misrepresentation against Defendants and will not be barred by the economic loss doctrine at this time. The negligent misrepresentation claims should not be dismissed based on a failure to state a claim.

### Violations of the Texas Debt Collection Practices Act

Next, Plaintiff asserts wrongful debt collections claims against Defendants, arguing that they violated Section 392.301(a)(8) of the Texas Finance Code. Section 392.301(a)(8) prohibits threatening to take an action prohibited by law. TEX. FIN. CODE. 392.301(a)(8). Plaintiff has not sufficiently alleged any facts that would show any threats of actions prohibited by law. Plaintiff claims that Defendants did not have the authority to foreclose and did not properly appoint a substitute trustee prior to issuing a December 10, 2009 foreclosure notice. The Court has addressed Plaintiff's failure to state a claim as to Defendants' authority to foreclose above. Moreover, Section 392.301(b)(3) of the TDCPA specifically excludes the exercising of a "statutory or contractual right of seizure, repossession or sale that does not require court proceedings" from its provisions. *See*

TEX. FIN. CODE § 392.301(b)(3).  Therefore, the Court agrees those claims should be dismissed.

**Violations of the Texas DTPA: Unconscionable Acts and Misrepresentation of Services**

As to Plaintiff's claims under the Texas Deceptive Trade Practices Act, the Court agrees with Defendants that she cannot state a claim.  To establish a Texas Deceptive Trade Practices Act claim, a plaintiff must allege facts showing: (1) plaintiff is a consumer; (2) defendant can be sued under the DTPA; (3) defendant committed a wrongful act proscribed by the DTPA; and (4) defendant's wrongful act was the producing cause of plaintiff's damages.  *See* TEX. BUS. & COM. CODE §§17.41 *et seq.*  To meet the DTPA standing requirement, a complaining party must plead and prove that he or she is a "consumer" as defined in the DTPA. TEX. BUS. & COM. CODE § 17.50(a); *Burnette*, 2010 WL 1026968, at *9 (citing *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.– San Antonio 1996, no writ)).  To establish consumer status under the DTPA, a plaintiff must be "an individual ... who seeks or acquires by purchase or lease, any goods or services ...." TEX. BUS. & COM. CODE § 17.45(4).  Generally, loans of money or extensions of credit are not considered "goods" or "services" that can form the basis of a DTPA claim.  *Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351, 3 (N.D. Tex. 2010) (where party was attempting to only borrow money and not purchase a good or a service, it did not satisfy the requirements for consumer status under the DTPA and therefore failed to state a claim pursuant to the Texas Deceptive Trade Practices Act); *Guardian Life Ins. Co. v. Kinder*, 663 F. Supp.2d 544, 553 (S.D. Tex. 2009); *La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 567 (Tex. 1984); *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174 (Tex. 1980); *Maginn v. Norwest Mortgage, Inc.,* 919 S.W.2d 164, 166-67 (Tex. App. – Austin 1996, no writ).  However, a party who obtains a loan which is "inextricably intertwined" in the purchase or

lease of a good or service may qualify as a consumer. *Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex. 1982) (finding that a bank customer qualified as a consumer because he sought financing to purchase a dump truck); *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex. 1983) (holding that party was a consumer when party's mortgage loan was intertwined with contractor's agreement to build a house); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. – Fort Worth 2007, pet. denied) (the refinance of home equity loan cannot qualify as a good or a service under the DTPA); *Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp.2d 842, 855 (N.D. Tex. 2006) (one who obtains a home equity loan does not obtain a "good" or a "service" to qualify as a consumer under the DTPA).

Here, Plaintiff argues that she is a consumer because she received loan servicing from Bank of America. This is not enough to state a claim under the DTPA. *James v. Wells Fargo Bank, N.A.*, 2013 WL 3240306, 2 (5th Cir. 2013) (affirming district court's findings that the plaintiffs' DTPA claims against mortgage servicer failed as a matter of law because they were not consumers under the Act). Plaintiff's claims under the DTPA claim should be dismissed. *See, e.g., Miller v. BAC Home Loans Serv., L.P.*, __ F. 3d __, 2013 WL 4080717 (5th Cir. 2013) (mortgagor could not state DTPA claim regarding alleged misrepresentations during the course of loan modification was not consumer because complaint was based on "pure loan transaction"). No DTPA claim has been stated.

Therefore, having analyzed Plaintiff's live complaint under Rule 12(b)(6), the Court finds that Plaintiff has not stated any facts sufficient to challenge the enforceability of the mortgage documents or Defendants' authority to foreclose, nor has Plaintiff stated any claims of wrongful debt

collection practices under the Texas Debt Collection Practices Act or any claims under the DPTA.

As to Plaintiff's fraud and negligent misrepresentation claims, the Court finds that, reading the facts in a light most favorable to Plaintiff – and by the slimmest of margins – there are sufficiently pleaded facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct and they should not be dismissed under Rule 12(b)(6). *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

Nonetheless, having considered Defendants' motion for summary judgment – also pending before the Court – the Court finds that Plaintiff shall take nothing by any of her fraud and negligent misrepresentation claims. Indeed, as set forth below, Plaintiff has failed to create a fact issue as to any of her alleged claims, even had all of them survived Rule 12(b)(6) scrutiny.

### SUMMARY JUDGMENT STANDARD

As noted above, Defendants have filed a motion for summary judgment as to all of Plaintiff's claims. *See* Dkt. 25. Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th

Cir. 2001).  In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986).  The moving party, however, "need not negate the elements of the nonmovant's case."  *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case.  *Stults v. Conoco, Inc*., 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial."  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14).  Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial.  *Stults*, 76 F.3d at 655.  The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact.  E.D. TEX. LOCAL R. CV-56(d).  Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden.  *Stults*, 76 F.3d at 655.

### MOTION FOR SUMMARY JUDGMENT ANALYSIS

In support of their motion for summary judgment (filed as to all Plaintiff's claims), Defendants submitted the following evidence: (1) Exhibit "A" Declaration of Patricia Van Voorhees

(Bank of America); (2) Exhibit "A-1" Note; (3) Exhibit "A-2" Deed of Trust; (4) Exhibit "A-3" Assignment; (5) Exhibit "B" Declaration of Scott Brown (Mackie Wolf); (6) Exhibit "B-1" June 12, 2009, Notice of Acceleration; (7) Exhibit "C" Declaration of Paul Butler (ReconTrust); and (8) Exhibit "C-1" Notice of Substitute Trustee's Sale Filed with Denton County Clerk, October 15, 2012. *See* Dkt. 25-1 – 25-3.

In her originally filed response, Plaintiff submitted no summary judgment evidence, seeking additional time to conduct discovery and requesting abatement of the Court's consideration of the motion for summary judgment. *See* Dkt. 27. After the discovery deadline had passed, Plaintiff also requested a modification of the Court's scheduling order in order to serve discovery on Defendants. *See* Dkt. 29.

After Plaintiff retained new counsel and after an oral hearing on Plaintiff's motion to modify the scheduling order, the Court granted Plaintiff additional time to conduct a deposition of Defendants' corporate representative to determine whether the Trust was still in existence and additional time to supplement her responses to the motion to dismiss and motion for summary judgment. *See* Dkt. 35.

On July 31, 2013, Plaintiff supplemented her summary judgment response with more than 1000 pages of documents labeled as follows: "(1) Exhibit 1 Affidavit of Shelly D. Smith; (a) 1A Note; (b) 1B Deed of Trust; (c) 1C Deed of Trust (Secondary Lien); (d) 1D MERS Transfer and Assignment; (e) 1E Appointment of Substitute Trustee; (f) 1F June 12, 2009 Notice of Acceleration; (g) 1G December 10, 2009 Notice of Reposting and Sale; (h) 1H November 8, 2010 Letter from BAC Home Loans; (i) 1I Letter from Recontrust Company; (j) 1J September 28, 2011 Letter from

Blank Rome LLP; (k) 1K March 12, 2012 Notice of Substitute Trustee's Sale; (l) 1L April 10, 2012 Notice of Substitute Trustee's Sale; (m) 1M Notice of March 5, 2013 Substitute Trustee's Sale; (n) 1N Denton County Appraisal District Property Report; (2) Certified Copies of Declarations File for *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation (No. 1:10-md-02193 Doc. 210)*; (a) 2A Declaration of William E. Wilson, Jr.; (b) 2B Declaration of Simone Gordon; (c) 2C Declaration of Theresa Terrelonge; (d) 2D Declaration of Steven Cupples; (e) 2E Declaration of Recorda Simon; and (f) 2F Declaration of Erika Brown; and (3) Affidavit of Forensic Loan Audit by Teri L. Petit; (a) 3A The Note, January 31, 2006; (b) 3B The Mortgage, January 31, 2006; (c) 3C Form 424-B5 Registration Prospectus for "First Franklin Mortgage Loan Trust 2006-FF7," filed May 31, 2006; (d) 3D Free Writing Prospectus filed by "First Franklin Mortgage Loan Trust 2006-FF7," May 31, 2006 (e) 3E Form 15-15D, "Certification and Notice of Termination," of "First Franklin Mortgage Loan Trust 2006-FF7," filed January 29, 2007; (f) 3F Final 10-K Annual Report of "First Franklin Mortgage Loan Trust 2006-FF7," filed June 9, 2008 3G List of all filings on behalf of "First Franklin Mortgage Loan Trust 2006-FF7; (h) 3H Corporate Profile and History of NationPoint, published by InsideView.com; (i) 3I Corporate Profile and History of Home Loan Services, Inc., published by Bloomberg Businessweek; (j) 3J Purported Mortgage Bill from Bank of America, by and through its subsidiary NationPoint, July 10, 2008; (k) 3K "Notice of Acceleration of Loan Maturity" sent by foreclosure counsel to Mortgagor, June 12, 2009; (l) 3L Purported "Transfer and Assignment"; (m) 3M Purported "Notice of Substitute Trustee's Sale," March 12, 2012; (n) 3N Complaint against Bank of America, et al, filed by Commonwealth of Massachusetts on December 1, 2011; (o) 3O "Memorandum of Review," Office

of Inspector General, U.S. Department of Housing and Urban Development, issued March 12, 2012; (p) 3P Relevant Title Abstract of the Subject Property, March 15, 2012." *See* Dkts. 38-1 – Dkt. 41. Although voluminous, the documents can be generally categorized as (1) Plaintiff's Affidavit; (2) Berman Affidavit and documents from Massachusetts litigation; and (3) Affidavit of Forensic Loan Audit by Teri L. Petit.[4]

Having reviewed the record in its entirety, and having given Plaintiff additional time to prepare her response and conduct discovery past the discovery deadline, the Court finds that Plaintiff has failed to create a fact issue as to any of her claims here.

The Court first addresses Plaintiff's Exhibit 3, the Affidavit of Teri L. Petit, who purports to be a mortgage fraud and forensic analyst. Petit states that she has reviewed the documents at issue and offers an opinion to "assist this Court in comprehending the arcane subject of securitization and to pinpoint instances of fraud, mistake, and irregularities in the Defendants' conduct as these became known through [her] forensic examination of the evidence...." Dkt. 39 at 2.

Defendant argues that this expert opinion was not timely disclosed.[5] The expert deadline in this case fell on June 27, 2013. *See* Dkt. 26. Petit's affidavit is dated March 15, 2012. *See* Dkt. 39 at 1. It was not filed until July 31, 2013. Plaintiff has not articulated any good cause as why the late expert designation (and report) should be considered. The Court denied Plaintiff any extension to

---

[4]Plaintiff did not supplement her response to the motion to dismiss despite being given the opportunity to do so.

[5]The record contains "Plaintiff's Certificate of Compliance" indicating Plaintiff's Expert Disclosures were served on Defendants on June 27, 2013. *See* Dkt. 36. It is not clear whether Petit was designated as an expert at that time. Plaintiff does not dispute, however, that her report was produced after the Court's deadline.

designate her expert at the June 13, 2013 hearing, prior to the designation deadline, and good cause is required to modify any dates in a scheduling order. FED. R. CIV. P. 16(b)(4). For this reason alone, the Court finds that the report is not competent summary judgment evidence and should not be considered.

Moreover, even if the Court were to allow Plaintiff to supplement her expert designations with the opinions of Petit (and assuming she is qualified to render such opinions), the Court notes that the majority of Petit's report constitute legal conclusions or contain inadmissible conclusions regarding the contents of documents in contravention of Federal Rule of Evidence 1002. The documents discussed should speak for themselves.

And, even if the Court were to consider Petit's report and the unauthenticated documents attached – most of which appear to be printouts from the internet, not authenticated copies of any filed SEC materials – they simply do not create a fact issue as to the existence of the Trust. The full title of Exhibit 3E – which Plaintiff has characterized as a January 29, 2007 "Certification and Notice of Termination" – is actually "Certification and Notice of Termination *of Registration under Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports under Sections 13 and 15(d) of the Securities Exchange Act of 1934*." Dkt. 41-3 at 2 (emphasis added). By its own title and language within, the document asks the filer to designate the provision under which it seeks to terminate or suspend "the duty to file reports." *Id.*[6] Nothing in the document states that the Trust

_____

[6]Indeed, although no party has addressed it, a brief review of the regulations governing SEC filings indicate that Section 15(d) of the Exchange Act provides an automatic suspension of the periodic reporting obligation as to any fiscal year (except for the fiscal year in which the registration statement became effective) if an issuer has fewer than 300 security holders. 17 C.F.R. §240.12h-3. Exhibit 3E appears to cite this filing exception.

is terminated or suspended. Indeed, other exhibits attached to the report evidence activities and filings by the Trust well into 2008, after Plaintiff's alleged January 2007 termination date. *See* Dkt 41-3 at 5-19.[7] The Court also notes that Plaintiff was specifically provided additional time to depose Defendants' corporate representative regarding the existence of the Trust and, Plaintiff has not offered any deposition testimony that would create a fact issue as to the statement in the Declaration of Defendants' representative, Patricia Van Voorhees, that the Trust is still in existence. *See* Dkt. 25-1 at ¶5.[8]

The Court next addresses Plaintiff's summary judgment Exhibit 2. It is the Declaration of Steve Berman, an attorney representing various plaintiffs in a suit proceeding in Massachusetts regarding loan modifications. Berman attaches documents produced in that litigation. *See* Dkt. 38-2. Plaintiff in this case has not shown how the Berman affidavit which addresses alleged conduct regarding other borrowers in another suit in another state and District creates a fact issue as to Plaintiff's claims here.

Moreover, although the Court has not scoured the exhibit, as it is not its burden to do so, it appears to the Court that the Berman affidavit and exhibits focus on lenders' purported conduct when offering borrowers the opportunity to modify their loans. Although this Court is familiar with the many cases involving failed loan modifications, no facts have been alleged by Plaintiff in this case

---

[7]Although Petit opines that the document attached to her affidavit as Exhibit F reflects a June 9, 2008 termination date of the Trust, *see* Dkt. 39 at 9, the only June 2008 date the Court can see on the document, which appears to be an Amendment to the Trust's Form 10-K/A, is June 5, 2008 – four days prior to the purported expert's claimed termination of the Trust.

[8]Although the deposition transcript is not before the Court, according to Defendant's summary judgment reply, the corporate representative testified that the Trust is still in existence. *See* Dkt. 43 at 2.

regarding any representations made to her during any loan modification process. Indeed, no facts are alleged that any attempts were made to modify Plaintiff's loan. The gravamen of Plaintiff's complaint is that the Trust who purported to own the loan did not exist and various entities indicating that they owned or serviced the loan at any point in time may not have owned or had servicing rights to the loan. The Court has found that Plaintiff has only stated claims as to fraud and negligent misrepresentation accordingly. Any evidence regarding loan modification is simply irrelevant to Plaintiff's viable claims and creates no fact issue here.

The Court thus turns to Plaintiff's claims of fraud and negligent misrepresentation and Plaintiff's remaining summary judgment evidence, Plaintiff's Exhibit 1, her affidavit and attachments. The Court has disregarded the portions of Plaintiff's affidavit constituting hearsay or inadmissible legal conclusions.

As to Plaintiff's fraud claim, as noted above, Plaintiff has failed to create a fact issue as to the existence of the Trust. The uncontroverted summary judgment evidence – the Declaration of Patricia Van Voorhees – indicates that the Trust is in existence. Moreover, Plaintiff has failed to offer any summary judgment that would show how she relied to her detriment on the representation that her loan was owned by the Trust. Without evidence of any material misrepresentation or of the injuries she suffered as a result of that specific alleged misrepresentation, she should take nothing by her fraud claim. *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d 200, 212 (5th Cir. 2009).

For this reason, Plaintiff's negligent misrepresentation claim regarding the existence of the Trust also fails. As to her claim of negligent misrepresentation as to the materials sent to her

reflecting different names of owners and servicers, Plaintiff has offered affidavit testimony that "she began receiving documentation with conflicting information about who the mortgage company was" and cites to a series of communications from different parties. *See* Dkt. 38-1 at 2. Plaintiff has not shown, however, that the representations as to who owned or serviced the loan at any given time were false, nor has Plaintiff offered any summary judgment evidence that would show how she relied on such representations. *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d at 734.

Moreover, Plaintiff has presented no evidence that would create a genuine issue of material fact as to any extra-contractual damages suffered. Plaintiff argues that she "has presented evidence of personal injuries, which are outside the subject matter of the contract and benefit-of-the-bargain damages" and that "Defendants' tortious actions caused Plaintiff to suffer severe mental anguish and emotional distress." Dkt. 38 at 9. In support of this claim, Plaintiff cites generally to her affidavit. The only provision in her affidavit addressing the harm she suffered states that she has "become totally frustrated in my efforts to communicate with the lenders." Dkt. 38-1 at 4. Plaintiff has cited to no evidence of damage to her reputation or credit score as she alleged in her complaint. The evidence before the Court is simply not enough to survive the application of the economic loss rule. Plaintiff must create a fact issue – with evidence of an injury independent from the subject matter of the loan contract. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663–64 (Tex. 1998).

The Court finds that Plaintiff has failed to create a fact issue as to any of her claims here. She has not made any allegations or offered any evidence that would controvert Defendants' contention that she has not paid her mortgage for over four years and has apparently lived in a home rent free

24

during the pendency of litigation and negotiations with the lenders and servicers. The Court notes that Plaintiff filed a suit against Defendants in this Court alleging essentially identical facts in April 2012, but sought voluntary dismissal of that suit in October 2012 before the merits of the case could be addressed. *See* 4:12cv212. Plaintiff then appears to have refiled the same suit, alleging many of the same claims, in state court, only to be removed here. Such tactics, whatever the motive, coupled with this Court's overloaded docket have benefitted Plaintiff by giving her time. Plaintiff has had sufficient time to conduct discovery and to marshal sufficient evidence to create fact issues regarding her claims. The time is now up, and there is simply not enough in the record that would allow any claims to proceed.

The Court recommends that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 14) be GRANTED as to Plaintiff's claims challenging the enforceability of the negotiable instrument, Plaintiff's TDCPA claims and Plaintiff's DTPA claims, that those claims be dismissed for failure to state a claim, and that the motion to dismiss be DENIED as to Plaintiff's common law fraud and negligent misrepresentation claims. The Court further recommends that Defendants' Motion for Summary Judgment on Plaintiff's First Amended Complaint (Dkt. 25) be GRANTED as to all remaining claims, that Plaintiff take nothing by her claims here, and that final judgment be entered for Defendants awarding them their costs in this matter.

All remaining deadlines in the Court's scheduling order, Docket Entry 26, are hereby abated pending the District Judge's consideration of this report and recommendation. The Parties' Motion to Extend the Mediation Deadline (Dkt. 47) is DENIED as MOOT. Should any of Plaintiff's claims survive, the parties are directed to file an amended proposed scheduling order within ten (10) days

of the District Judge's disposition of the motion to dismiss and motion for summary judgment. The parties may include any agreements regarding a selected mediator in that proposal.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 28th day of August, 2013.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE